IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
UNITED STATES OF AMERICA,      )
                               )    2:10-cr-00265-GEB
          Plaintiff,           )
                               )
     v.                        )    ORDER RE DEFENDANT'S FORMAL
                               )    OBJECTIONS TO PRESENTENCE
LORI ZOVAL,                    )    REPORT
                               )
          Defendant.           )
_____)
```

Defendant raises three formal objections to the Sentencing Guidelines calculation in her Presentence Report ("PSR"). An evidentiary hearing was held on her objections on September 28, 2012, and a sentencing hearing was held on October 12, 2012.

Each of Defendant's objections to the PSR are addressed in turn.

**A.   14 Level Increase under § 2B1.1(b)(1)(H)**

Defendant objects to the fourteen-level increase to her offense level for losses exceeding $400,000 under Sentencing Guideline § 2B1.1(b)(1)(H). (Def.'s Sentencing Memo. with Formal Objections ("Def's Obj.") 6:5-7.) Defendant argues the probation officer erroneously included in the loss amount $225,000 which was not stolen from the victims; rather, Defendant argues she "had an agreement with the Dixon's to invest [the referenced $225,000] into real property[,]"

1

1  and the money was lost through her negligence "not criminal activity."
2  Id. at 6:7-7:28.
3        The government rejoins that Defendant's claim that $225,000
4  was lost through her negligence is "preposterous" and is "belie[d]" by
5  her "own conduct." (Gov'ts Resp. to Def.'s Obj. ("Gov'ts Resp.")
6  5:17-20.) The government argues: "the victims authorized a real estate
7  investment through an experienced broker with the expectation of a
8  healthy return[; Defendant], instead, used the money to buy a home in
9  her boyfriend's name." Id. 5:20-22.
10       FBI special agent Janet Palomar testified during the September
11 28th evidentiary hearing that Defendant was the investment broker for
12 Dr. and Mrs. Dixon. Agent Palomar also testified that the victims' loss
13 totaled approximately $430,000, as a result of Defendant's embezzlement.
14 (Hr'g Tr. 5:22-24.) Agent Palomar testified that the $430,000 amount is
15 comprised of approximately $114,000 in two whole life insurance
16 policies, which Defendant recommended the Dixons purchase but they
17 "advised her they were not interested in" obtaining; a proposed real
18 estate investment totaling $225,000; and multiple wire transfers from
19 two Dixon family accounts totaling over $94,000. Id. 6:18-7:10;
20 9:6-11:17, 13:9-11, 13:12-18:17, 22:6-14.
21       Defendant argued at the October 12th sentencing hearing that
22 the insurance policies were purchased on behalf of the Dixons and that
23 the Dixons later cancelled the policies because they became too
24 expensive. This argument is discredited by Agent Palomar's testimony
25 that her investigation revealed fraud in the policies' purchase in that
26 the "signatures on the contract to purchase the policies were forged."
27 (Hr'g Tr. 7:16-8:21.)
28

Concerning the proposed real estate investment funds of $225,000, Agent Palomar testified all of the money initially went to Defendant's boyfriend, Cody Baudoin, who has no experience in real estate or investment brokerage. Id. 14:9-25. From Mr. Baudoin's account, Agent Palomar testified approximately $91,000 went to the direct purchase of real property in Don Pedro, California, in the names of Defendant and Mr. Baudoin, jointly; approximately $41,000 went into the account of third parties Jack and Carol Harrington; and the remaining amount remained in Mr. Baudoin's account, which was subsequently used for Defendant's living expenses. Id. at 17:5-25.

The sentencing record also evinces that Defendant misrepresented to the Dixons that Mr. Baudoin was her business partner and that the Dixons did not know Defendant and Mr. Baudoin had a personal relationship. (Hr'g Tr. 16:17-17:2; 63:19-21.) Further, Mrs. Dixon testified at the evidentiary hearing that after she was contacted by the FBI, she specifically asked Defendant if Mr. Baudoin was her boyfriend, and Defendant said no. Id. 63:21-23; see also Tr. of August 9, 2006 FBI Recorded Telephone Call, page 3, attached to Def.'s Resp., ECF No. 54-1. Mrs. Dixon also testified that when she questioned Defendant concerning the $225,000 real estate investment, Defendant said the money was invested in three different properties. Id. 68:18-69:9; see also Tr. of August 9, 2006 FBI Recorded Telephone Call, page 5. During a FBI recorded telephone call between Defendant and Mrs. Dixon, when questioned where the $225,000 was, Defendant represented that it was in commercial property being built in New Mexico, San Diego and Florida. (Tr. of August 9, 2006 FBI Recorded Telephone Call, pages 4-5.)

Sufficient evidence exists in the sentencing record to support by clear and convincing evidence that the victims' losses totaled over

3

$400,000 to support application of a fourteen-level enhancement under 2B1.1(b)(1)(H). <u>See</u> <u>United States v. Staten</u>, 466 F.3d 708, 720 (9th Cir. 2006)(stating facts found in support of Sentencing Guidelines enhancements which "have a disproportionate impact on the ultimate sentence imposed" must be "established by clear and convincing evidence"). I find Defendant's arguments that she negligently invested the Dixon's $225,000 and purchased the life insurance policies with the Dixon's consent incredible.

### B. Sophisticated Means Enhancement

Defendant also objects to application of the sophisticated means enhancement under Sentencing Guideline § 2B1.1(b)(10)(C). (Def.'s Obj. 8:1-9.) Defendant argues "[t]he crime of conviction is very straightforward, similar to direct embezzlement[; i]t is not 'especially complex or especially intricate' as required for the enhancement to apply." <u>Id.</u> at 8:12-16.

The government counters, this "two-level enhancement is warranted and should be applied." (Gov'ts Resp. 6:27.) The government argues, "[Defendant] did not simply transfer money from the victims' accounts. She created false account statements to conceal the theft from the victims, had documents fraudulently notarized to conceal the fraud from the brokerage, and had friends open new bank accounts into which she secreted stolen funds." (Gov'ts Resp. 6:23-26.)

As part of her plea agreement, Defendant agreed that the following facts are accurate:

> The defendant . . . was a licensed investment banker, who worked as an independent contractor for a brokerage firm in Folsom, CA. . . . [Defendant] stole funds by explaining to her clients that she was setting up tax shelters that required her to transfer funds into the names of third parties she called "provisional employees."

4

>           To facilitate the transfer of funds, [Defendant] fraudulently created documents making it appear that her clients authorized the money transfers. [Defendant] convinced a friend to notarize [her] clients' signatures on documents without their knowledge or presence. [Defendant] took additional steps to lull the victims into believing that she was making legitimate and profitable investments. To conceal the fraudulent transfers from her employer and clients, [Defendant] created and sent false account statements reflecting false, inflated returns and balances to the victims.

(Factual Basis for Pleas, attached as Ex. A to Plea Agreement, ECF No. 42.) The sentencing record also evinces that as part of Defendants's scheme, she utilized the bank accounts of third parties who were personal friends. (Hr'g Tr. 9:6-19, 10:9-11:20, 18:1-12, 35:15-36:3.)

These facts support by a preponderance of the evidence the application of § 2B1.1(b)(10)(c)'s two-level enhancement. United States v. Pineda-Doval, 614 F.3d 1019, 1041 (9th Cir. 2010)("The preponderance of the evidence standard is generally the appropriate standard for factual findings used for sentencing.") Defendant used "especially complex or . . . intricate" efforts to "conceal[] [the] offense." U.S.S.G. § 2B1.1 cmt. n. 8.

**C.    Abuse of Position of Trust or Use of Special Skill Enhancement**

Defendant also objects to probation's recommendation in paragraph 31 of the PSR that she receive a two-level enhancement under Sentencing Guideline § 3B1.3 for abusing a position of trust or use of special skill. (Def.'s Obj. 8:17-18.) Defendant argues using this enhancement with the sophisticated means enhancement constitutes impermissible "double counting" under the guidelines because the "factual basis" for the two enhancements is the same. Id. at 8:18-22. Defendant further argues she lacked the discretion required to apply this enhancement. Id. at 9:6-11.

5

The government counters, "[Defendant] used her special skill as a broker to steal the victim's money[, and h]er use of this skill is completely unrelated to the sophisticated means special offense characteristic[.]" (Gov'ts Resp. 7:2-5.)

I find by a preponderance of the evidence that Defendant used her special skill, i.e. "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing" as a licensed investment banker to "facilitate[] the commission [and] concealment of the offense" under § 3B1.3. See U.S.S.G. § 3B1.3 cmt. n. 4. Further, application of this enhancement with the sophisticated means enhancement does not constitute impermissible double counting as Defendant argues.

For the stated reasons, Defendant's objections to the fourteen-level enhancement under § 2B1.1(b)(1)(H), the two-level enhancement under § 2B1.1(b)(10)(C), and the two-level enhancement under § 3B1.3 are overruled.

A copy of this order shall be appended to any copy of the PSR made available to the Bureau of Prisons in accordance with Federal Rule of Criminal Procedure 32(i)(3)(c).

Dated: October 12, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge